IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                    Criminal No. 3:24cr104

JOSHUA J. JERNIGAN

### MEMORANDUM OPINION

This matter is before the Court on MR. JERNIGAN'S FIRST MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT (ECF No. 18) (the "MOTION"), the Government's Response in Opposition to Defendant's Motion to Dismiss Indictment (ECF No. 19), and MR. JERNIGAN'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS FIRST MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT (ECF No. 20). The MOTION was denied by ORDER (ECF No. 21) entered on September 5, 2024. This MEMORANDUM OPINION explains the reasons for denying the MOTION.

### BACKGROUND

Joshua J. Jernigan was indicted in COUNT ONE for violating 18 U.S.C. § 922(g)(1), the federal law prohibiting felons from possessing firearms; and, in COUNT TWO for violating 26 U.S.C. § 5861(d), the federal law prohibiting possession of unregistered firearms. (ECF No. 14). The possessions by Jernigan that are charged in COUNT ONE and COUNT TWO arose out of the execution of two search warrants executed on December 26, 2023. On that date,

Colonial Heights police Department responded to Jernigan's home for a domestic call. Jernigan's common-law wife informed the responding officers that Jernigan had brandished a firearm at her and threatened her life. Officers asked Jernigan if he had firearms within his house, which he denied. The officers then asked for permission to access to the house, which Jernigan permitted. During the consent search, officers recovered a firearm magazine. At that point, Jernigan revoked the consent. Accordingly, the officers obtained two separate search warrants for the premises. The items alleged to be possessed by Mr. Jernigan in the Indictment were seized when those search warrants were executed.

In particular, the officers seized nearly 30 firearms from Jernigan's residence and his vehicle. The seizure included five silencers, a short-barreled rifle, and a short-barreled shotgun. (ECF No. 14). Jernigan had not properly registered the silencers or short-barreled firearms. Jernigan was indicted in COUNT TWO for the possession of these silencers and firearms in violation of 26 U.S.C. § 5861(d). (ECF No. 14).

By 2023, Jernigan was a convicted felon. Jernigan was convicted in state court in 2004 of Conspiracy to Commit Statutory Burglary, Statutory Burglary with Intent, and Possession of Burglary Tools. In 2008, he was convicted in state court in North Carolina of Possession of Stolen Goods or Property. (ECF No. 10, pp. 4-7). Thus, it appears beyond dispute that, on the dates in

2

2023 when Jernigan is alleged to have possessed the firearms, he was a convicted felon.

## DISCUSSION

Jernigan's positions on the constitutional issues presented in the MOTION are confusing. To begin, he asserts that "18 U.S.C. § 922(g)(1) and 26 U.S.C. § 5861(d) are unconstitutional on their face, and unconstitutional as applied to [him]." (ECF No. 18, p. 1). Then, in a footnote keyed to the text, "on their face," Jernigan says that he "maintains his facial challenge here only to preserve the issue for later review." (ECF No. 18, p. 1, n. 1, citing United States v. Canada, 103 F.4th 257, 258 (4th Cir. 2024) which pertains only to 18 U.S.C. § 922(g)(1)).

Thereafter, the MOTION devotes twenty-two pages to what appears to be a facial challenge directed to both 18 U.S.C. § 922(g) and 26 U.S.C. § 5861(d). (ECF No. 18, pp. 1-23). However, in so doing, the MOTION does not differentiate its analysis of the two, quite different, statutes.

That, of course, makes more difficult the resolution of the two facial challenges. That difficulty notwithstanding, the Court has sought to determine the basis for the challenge to each statute then to discuss each facial challenge separately.

Near its end, the MOTION contains one and a half pages of text under the following heading: "Additionally, as applied to Mr.

3

Jernigan, 18 U.S.C. § (g)(1) and 26 U.S.C. § 5681(d) are unconstitutional." (ECF No. 18, p. 23-24). It is difficult to discern the exact nature of Jernigan's as-applied challenge to the two distinctly different statutes.

But, it appears, from the text of the MOTION, that the as-applied challenge to 18 U.S.C. § 922(g)(1) is that (i) "[Jernigan] was never found to be a credible danger to a specific individual or victim, or other people generally;" (ii) [h]e was not previously convicted of a 'violent offense;'" and (iii) there is "no finding that he is a credible threat to others." (ECF No. 18, p. 23). How those assertions present an as-applied challenge to 18 U.S.C. § 922(g)(1) prohibiting possession of a firearm because of Jernigan's status as a felon is difficult to understand where, as here, his status as a felon is not disputed and the applicable statute does not specify that the felony be a violent offense or that the felon be a credible threat to others. United States v. Pruess, 703 F.3d 242, 247 (4th Cir. 2012) (The "application of the felon-in-possession prohibition to allegedly non-violent felons [] does not violate the Second Amendment."); United States v. Fowler, 2024 WL 197601, at *4 (E.D. Va. Jan. 18, 2024) (Holding that post-Bruen, "Moore and Pruess remain binding precedent that the Court must faithfully apply.").

The as-applied challenge to 26 U.S.C. § 5861(d) is even more difficult to grasp. What Jernigan has to say on that subject

4

appears in the following two sentences:

> Additionally, the permanent requirement of registration for a category of arms is not supported by an historical analogue. Mr. Jernigan has a constitutional right to the arms found in his residence to protect himself and his family. Because there is no history or tradition of limiting this right in the manner 28 [sic] U.S.C. § 5681(d) does the govern can not [sic] meet its burden to establish that statute, and the accompanying regulations, is constitutional.

(ECF No. 24, p. 24). That argument is part of Jernigan's facial challenge to 28 U.S.C. § 5861, but how that presents an as applied challenge to 26 U.S.C. § 5861(d) is quite beyond comprehension.

To further complicate things, Jernigan makes the following statement in the consolidated facial challenge segment of the MOTION: "[t]he above arguments [the attack on § 922(g)(1)] apply equally to the facial and as applied challenges." (ECF No. 18, p. 19). The ensuing three sentences do not explain why the preceding facial challenge text is equally applicable to an as applied challenged. And, the Court has not been able to divine what that part of Jernigan's brief means. So, the equally applicable theory will not be considered.

With these basic principles and the foregoing difficulties in mind, the facial constitutional challenge to 18 U.S.C. § 922(g) is addressed in Section C(1). The facial challenge to 26 U.S.C. § 5861(d) is addressed in Section C(2). The as applied challenges are addressed in Section D.

5

## A.    Standard of Review

Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure "permits a court to dismiss a defective indictment, and an indictment is defective if it alleges a violation of an unconstitutional statute." United States v. Brown, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) (citing In re Civil Rights Cases, 109 U.S. 3, 8-9 (1883)). "To warrant dismissal of the indictment, [the defendant] would need to demonstrate that the allegations therein, even if true, would not state an offense." U.S. v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004) (citing U.S. v. Hooker, 841 F.2d 1225, 1227-28 (4th Cir. 1988) (en banc)).

## B.    The Principles That Apply to Jernigan's Challenges

"A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications. So classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation." Bucklew v. Precythe, 587 U.S. 119, 138 (2019) (citation omitted). "To succeed in a facial constitutional challenge, a movant 'must establish that no set of circumstances exists under which the Act would be valid.'" United

6

States v. Hosford, 843 F.3d 161, 165 (4th Cir. 2016) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

An "as applied" challenge "contends that a law's application to a particular person under particular circumstances deprives that person of a constitutional right. Thus, a successful 'as applied' challenge precludes the enforcement of a statute against a plaintiff alone." Marcellus v. Virginia State Bd. of Elections, 168 F. Supp. 3d 865, 872 n.8 (E.D. Va. 2016), aff'd, 849 F.3d 169 (4th Cir. 2017) (citing Federal Election Com'n v. Wisc. Right To Life, Inc., 551 U.S. 449, 481 (2007)).

## C.  The Facial Challenges

### (1) 18 U.S.C. § 922(g)(1)

In the MOTION, Jernigan contends that 18 U.S.C. § 922(g)(1) is unconstitutional on its face, relying on the decisions of the Supreme Court of the United States in New York Rifle & Pistol Assn, Inc. v. Bruen, 597 U.S. 1 (2022) and United States v. Rahimi, 602 U.S. ___, 144 S. Ct. 1889 (2024). The facial constitutional challenge is made solely "to preserve the issue for later review." (ECF No. 18, p. 1, n.1). For that reason, and in reliance on the decision in United States v. Canada, 103 F.4th 257 (4th Cir. 2024), that aspect of the MOTION was denied.

Nonetheless, it is appropriate to consider the arguments on which Jernigan bases his facial challenge to § 922(g)(1), as best

those arguments can be teased from the undifferentiated two-statute attack.

First, Jernigan asserts that he is "part of 'the people' who are entitled to keep and bear arms [under the Second Amendment]." (ECF No. 18, p. 2). Second, he argues that, "under <u>Bruen's</u> 'text and history' standard, the government is unable to rebut the presumption that 18 U.S.C. § 922(g)(1) and 26 U.S.C. 5861(d) are unconstitutional." (ECF No. 18, p. 2).

Both arguments were fully and correctly addressed by the Court recently in <u>United States v. Sullivan</u>, 2024 WL 3540987 (E.D. Va. July 25, 2024) (ECF No. 37). For the reasons adequately explained in <u>Sullivan</u>, neither <u>Bruen</u> nor <u>Rahimi</u> disturbed the validity of the "'longstanding prohibition of firearms by felons.'" <u>United States v. Sullivan</u>, <u>supra</u>, ECF No. 37, p. 6 (citations omitted).

Here, as in <u>Sullivan</u>, the Court concludes that, "[a]s a felon, [Jernigan] is not one of 'the people' that the Second Amendment protects." <u>United States v. Sullivan</u>, <u>supra</u>, ECF No. 37, p. 8.[1] But even if that were not the case, Jernigan's lengthy record of serious convictions for burglary and possession of stolen goods or property evinces that he is certainly not a law-abiding citizen,

---

[1] See <u>also</u>, <u>United States v. Lane</u>, 689 F. Supp.3d 232 (E.D. Va. 2023); <u>United States v. Scott</u>, 2024 WL 3732465 (E.D. Va. August 6, 2024)(ECF No. 17).

and it is law abiding citizens who are protected by the Second Amendment.

Nor is Jernigan's "text and history" argument persuasive. In United States v. Riley, 635 F. Supp.3d 411 (E.D. Va. 2022), the Court explained thoroughly and carefully why "felon in possession prohibition laws are consistent with the Founders' understanding of the Second Amendment ratification." United States v. Riley, 635 F. Supp.3d at 426-28.[2] And, as in Sullivan, the Court finds Riley to be authoritative and correct.

### (2) 26 U.S.C. § 5861(d)

In the MOTION, Jernigan contends that, under Bruen, COUNT TWO Two of the Indictment must be dismissed as 26 U.S.C. § 5861(d) is facially unconstitutional. Jernigan argues there is no sufficient historical tradition of individuals possessing firearms under the Second Amendment having to comply with a national registry of firearms. (ECF No. 18, at 20-22). Jernigan posits that Bruen requires the Government "to identify a 'well-established and representative' tradition of 'distinctly similar' historical regulations mirroring the provisions of the NFA charged here." (ECF No. 18, at 20) (citing Bruen, 597 U.S. at 26, 30). Jernigan also challenges § 5861(d) as being unconstitutional as applied, because "Jernigan has a constitutional right to the arms found in

---

[2] See also, United States v. Lane, supra; United States v. Coleman, 698 F. Supp.3d 851 (E.D. Va. 2023).

his residence to protect himself and his family." (ECF No. 18, at 24).

The Government counters Jernigan's arguments in two ways. First, the Government argues that the National Firearms Registry under § 5861(d) is constitutional as it relates to short-barreled firearms, such as the short-barreled shotgun and short-barreled rifle in this case, because they are "dangerous and unusual" weapons that fall outside fall outside the protection of the Second Amendment. (ECF No. 19, at 30-32). Second, the Government argues that silencers are not "arms" under the Second Amendment, and thus not protected under it. (ECF No. 19, at 33). Jernigan responds with the assertion that short-barreled *rifles* are in common use today. He does not, however, argue that short-barreled shotguns are in common use. (ECF No. 20, at 14-15). Jernigan further contends that silencers are "arms" under the Second Amendment, because the Second Amendment does not limit arms to firearms. (ECF No. 20, at 17-18). Instead, says Jernigan, silencers are arms because "arms include 'proper accoutrements' outside of the physical firearm itself." (ECF No. 20, at 17-20).

It appears that the constitutionality of § 5861(d) post-Bruen is a matter of first impression in the Eastern District of Virginia. Each issue will be addressed in turn, first addressing whether the short-barreled firearms at issue in COUNT TWO are protected under the Second Amendment, and then whether silencers

10

are "arms" under the Second Amendment.  Jernigan's challenge to
this statute is a facial challenge.[3]

      **(a)  Short-Barreled Firearms Under the Second Amendment**

In <u>Bruen</u>, the Supreme Court established a new framework for
use when analyzing whether a challenged law regulates activity
that falls within the scope of the Second Amendment right to bear
arms as "originally understood." <u>Bruen</u>, 597 U.S. at 18 (quoting
<u>Kanter v. Barr</u>, 919 F.3d 437, 441 (7th Cir. 2019)). In applying
the <u>Bruen</u> standard, the first step is to determine whether the
plain text of the Second Amendment protects the regulated conduct.
<u>Id.</u> at 17-18.  If the plain text of the Second Amendment covers a
person's conduct, "the Constitution presumptively protects that
conduct" and the Government then has the burden of "justify[ing]
its regulation by demonstrating that it is consistent with the
Nation's historical tradition of firearm regulation." <u>Id.</u> at 24.
The Supreme Court clarified this framework in <u>Rahimi</u> and held "the
appropriate analysis involves considering whether the challenged
regulation is consistent with the principles that underpin our
regulatory tradition." 144 S. Ct. at 1898.

Long ago, the Supreme Court held that the Second Amendment
does not protect the carrying of all types of firearms. In <u>United</u>

--------

[3] It is noted previously at pages 3-4 and later at p. 20, that
Jernigan has not presented a discernable as applied challenge to
this statute.

States v. Miller, the Supreme Court examined whether the federal ban on possession and use of a shotgun with a barrel of less than eighteen inches violated the Second Amendment. 307 U.S. 174, 178 (1939). The Court held that, "[i]n the absence of any evidence" showing that a short-barreled shotgun had any "reasonable relationship to the preservation or efficiency of a well regulated militia," it "[could] not say that the Second Amendment guarantees the right to keep and bear such an instrument." Id. Building upon that reasoning, the Court in Heller held that Miller stood "for the proposition that the Second Amendment right . . . extends only to certain types of weapons." District of Columbia v. Heller, 554 U.S. 570, 622-23 (2008). Heller concluded that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes," and that a limitation on the types of weapons protected was supported by the "historical tradition of prohibiting the carrying of dangerous and unusual weapons." Heller, 554 U.S. at 625-27 (cleaned up). Bruen re-affirmed Heller's take on the prohibition against the possession "dangerous and unusual weapons, explaining there is a "fairly supported" "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" Bruen, 597 U.S. at 21 (citing 4 W. Blackstone, Commentaries on the Laws of England at 148-149; then quoting Miller, 307 U.S. at 179)).

12

The Fourth Circuit recently observed that "we know from Supreme Court precedent that short-barreled shotguns and machine guns are not in common use for a lawful purpose[.]" United States v. Price, __F.4th__, 2024 U.S.App.LEXIS 19623, at *16 (4th Cir. 2024) (citing Heller, 554 U.S. at 625, 629). Thus, the short-barreled shotgun at issue in this case is not protected under the Second Amendment because it is not a weapon in common use for a lawful purpose. Id. Thus, prohibiting possession of such a weapon is consistent with the tradition of prohibiting the carrying of "dangerous and unusual weapons."

Jernigan next argues that short-barreled *rifles* are in common use, and that Heller and Miller are not controlling of the constitutionality of regulations or statutes affecting possession of short-barreled rifles under the new Bruen framework. (ECF No. 20, at 14-16). Every other district court to have considered the issue post-Bruen has rejected that argument, and has held instead that short-barreled rifles are "dangerous and unusual weapons" that fall outside the protection of the Second Amendment.[4]

---

[4] The Court is not aware of any case that holds short-barreled rifles are in common use, and is aware of the following cases supporting that short-barreled firearms are "dangerous and unusual." See, e.g., US v. Chan, 2024 WL 4028019, at *4 (D. Haw. Sept. 3, 2024); Miller, 2023 WL 6300581, at *1-4; United States v. Danielson, 2023 WL 5288049, at *4-5 (D. Minn. Aug. 17, 2023); United States v. Saleem, 659 F. Supp. 3d 683, 692-94 (W.D.N.C. 2023); United States v. Royce, 2023 WL 2163677, at *2-3 (D.N.D. Feb. 22, 2023); United States v. Myers, 2024 WL 2924081, at *3-4 (D. Nev. June 10, 2024); United States v. Rush, 2023 WL 403774, at

The issue between the parties arises in the first step of the Bruen analysis,[5] and hinges on whether short-barreled rifles are "dangerous and unusual weapons" falling outside the protection of the Second Amendment. Jernigan argues that there are 532,000 short-barreled rifles in the United States, and that the presence of such a number invalidates any claim that short-barreled rifles are "unusual" under Miller, and instead "are covered by the Second Amendment because they are arms now in common use." (ECF No. 20, at 16-17).

A 2017 study established that an estimated 393,347,000 firearms are in civilian possession in the United States. See Civilian Firearms Holdings, 2017, Small Arms Survey, (last accessed Sept. 13, 2024), https://www.smallarmssurvey.org/sites/

---

*2-3 (S.D. Ill. Jan. 25, 2023); United States v. Broadbent, 2023 WL 6796468, at *4 (E.D. Cal. Oct. 13, 2023); United States v. Shepherd, 2024 WL 71724, at *4-5 (S.D. Miss. Jan. 5, 2024); United States v. DeFelice, 2024 WL 3028425, at *6 (D. Conn. June 17, 2024); United States v. Williams, 695 F. Supp. 3d 1295, 1299-1302 (N.D. Okla. 2023).

[5] In both Bianchi v. Brown and United States v. Price, the majority noted the analysis of "common use" is employed in the first step of the two-step Bruen analysis when determining if the firearm right is protected by the plain text of the Second Amendment. Bianchi v. Brown, __F.4th__, 2024 U.S.App.LEXIS 19624, *32 (4th Cir. 2024); see also United States v. Price, 2024 U.S. App. LEXIS 19623, at *18-19 (4th Cir. 2024). It is noted that Judge Richardson, in his dissent, wrote that by placing the common use analysis in the first step of the Bruen test the Fourth Circuit "loosens the rules in the Government's favor." Price, 2024 U.S. App. LEXIS 19623, at *71 (Richardson, J., dissent).

default/files/resources/SAS-BP-Civilian-held-firearms-annexe.pdf. This means that 532,000 short-barreled rifles would be approximately .13% of civilian owned firearms in the United States. Id. District courts have recently found the possession of 532,000 short-barreled rifles, the same number of short-barreled rifles alleged here, "are far from sufficient to render short-barreled rifles 'typically possessed by law-abiding citizens for lawful purposes.'" See US v. Chan, 2024 WL 4028019, at *4 (D. Haw. Sept. 3, 2024) (citing Hollis v. Lynch, 827 F.3d 436, 449 (5th Cir. 2016) (surveying cases and finding that possession 175,977 machineguns was insufficient to constitute common use of machineguns when compared to federal circuit courts finding millions of a type of weapon or magazine to be sufficient for common use)); see also United States v. Miller, 2023 WL 6300581, at *2-3 (N.D. Tex. Sept. 27, 2023) ("short-barreled rifles are not in common use today").

Likewise, federal courts uniformly have rejected the argument that short-barreled rifles are "dangerous and unusual weapons," finding, instead, that there is "no meaningful distinction" between short-barreled shotguns and short barreled rifles as their shortened barrels make them "dangerous, because its concealability fosters its use in illicit activity, and unusual, because of its heightened capability to cause damage." United States v. Cox, 906 F.3d 1170, 1185-86 (10th Cir. 2018)(quotations and citations omitted); Miller v. Garland, 674 F. Supp. 3d 296, 315 (E.D. Va.

15

2023) ("Courts have [] extended this analysis to short-barreled rifles envisioning no constitutional distinction between short-barreled rifles and short barreled shotguns."); United States v. Myers, 2024 WL 2924081, at *3 (D. Nev. June 10, 2024) ("Heller's statement that the Second Amendment does not apply to short-barreled shotguns applies with equal force to short-barreled rifles."). The Supreme Court has recognized that the National Firearms Act, which includes § 5861(d), was intended to regulate firearms likely to be used for criminal purposes, including more easily concealable short-barreled rifles. See United States v. Thompson/Ctr. Arms Co., 504 U.S. 505, 517 (1992) ("the NFA's object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used.").

The Court sees no reason to depart from the reasoning found to be sound and persuasive by so many district courts that have "held, post-Bruen, that unregistered short-barreled rifles are not protected by the Second Amendment because they are 'dangerous and unusual weapons' which are not typically possessed by law-abiding citizens for lawful purposes." Chan, 2024 WL 4028019, at *4 (quoting Myers, 2024 WL 2924081, at *3).

### (b)  Silencers Under the Second Amendment

We next turn to the issue of whether a silencer is "arms" for purposes of Second Amendment protection. In Heller, the Supreme

16

Court found "the 18th-century meaning [of arms] is no different from the meaning today." 554 U.S. at 581. <u>Heller's</u> definitions of "arms", from the late 18th Century, were "weapons of offence, or armour of defence,"[6] and "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another."[7] <u>Id.</u> Today, the Merriam-Webster dictionary defines "arm" as "a means (such as a weapon) of offense or defense."[8] "Thus, to receive Second Amendment protection, the instrument must be a bearable weapon for offense or defense." <u>United States v. Saleem</u>, 659 F. Supp. 3d 683, 695 (W.D.N.C. 2023).

The District of Maryland, in a case affirmed by the Fourth Circuit, held that a silencer:

> Is not inherently useful 'in case of confrontation' as a '[w]eapon of offence' or an 'armour of defence.' A silencer is not itself used 'to cast at or strike another,' it does not contain, feed, or project ammunition, and it does not serve any intrinsic self-defense purpose.

<u>United States v. Hasson</u>, 2019 WL 4573424, at *4 (D. Md. Sept. 20, 2019), <u>aff'd,</u> 26 F.4th 610 (4th Cir. 2022).

---

[6] 1 Dictionary of English Language 106 (4th ed.) (reprinted 1978).

[7] 1 A New and Complete Law Dictionary; see also N. Webster, American Dictionary of the English Language (1828) (reprinted 1989).

[8] <u>Arm</u>, Merriam-Webster, https://www.merriam-webster.com/dictionary/arm#dictionary-entry-3, (last visited September 12, 2024).

Jernigan maintains that "these definitions make clear that to be protected by the Second Amendment's constitutional right to 'bear arms' there is no requirement that the 'arm' in question be limited to an actual firearm" as "arms include 'proper accoutrements' outside of the physical firearm itself." (ECF No. 20, at 18). Jernigan argues silencers are necessary to the proper functioning and use of a firearm as they provide hearing protection, enhance overall safety, reduce recoil, and prevent "muzzle rise." (ECF No. 20, at 19-20).

To make this argument, Jernigan relies on the Fourth Circuit's decision in Kolbe v. Hogan, where the court stated "magazines and other forms of ammunition have long been recognized as arms." 813 F.3d 160, 175 (4th Cir. 2016) vacated on reh'g en banc on other grounds, Kolbe v. Hogan, 849 F.3d 114 (4th Cir. 2017). Kolbe examined whether large capacity magazines constituted arms under the Second Amendment and found that "the right to possess firearms for protection implies a corresponding right to possess component parts necessary to make the firearms operable." Id. (citing Jackson v. City of San Francisco, 746 F.3d 953, 967 (9th Cir. 2014) ("The Second Amendment protects 'arms,' 'weapons,' and 'firearms'; it does not explicitly protect ammunition. Nevertheless, without bullets, the right to bear arms would be meaningless.")). Unlike ammunition, a firearm does not require a silencer to operate, and without a silencer the right to bear arms would not be rendered

18

meaningless. See Saleem, 659 F. Supp. 3d at 698 ("The use of a silencer is in no way necessary to the effective use of a firearm—it certainly has benefits for the user, but unlike cleaning materials or bullets, a firearm can be used safely and effectively without a silencer.").

Moreover, "courts have routinely held that a silencer is not a firearm because a silencer cannot cause harm on its own, it is 'not useful independent of its attachment to a firearm,' and 'a firearm remains an effective weapon without a silencer.'" Miller v. Garland, 674 F. Supp. 3d 296, 314 (quoting Hasson, 2019 WL 4573424, at *5 (collecting cases)). Instead, the Court finds that a silencer is more akin to a firearm accessory "as it is not a weapon in itself (nor is it 'armour of defence')" thus "it can't be a 'bearable arm' protected by the Second Amendment." United States v. Cox, 906 F.3d 1170, 1186 (10th Cir. 2018); Hasson, 2019 WL 4573424, at *4-5. (A silencer is not a weapon in and of itself, but simply a 'firearm accessory,' ... and therefore not a "bearable arm" protected by the Second Amendment.") (citation omitted). These decisions are ample and well-reasoned support for the conclusion that silencers are not "arms" within the meaning of the Second Amendment, nor are they proper accoutrements to firearms that receive Second Amendment protection.[9]

---

[9] The Court does not address Jernigan's cursory argument that

19

**D.   As Applied Challenges**

**(1)   18 U.S.C. § 922(g)(1)**

Jernigan's as applied challenge to § 922(g)(1) is predicated on the fact that Jernigan has not been convicted of a violent offense and has not been found to present a credible threat to others.  (See p. 4, supra).  But that argument is based on a mistaken view of § 922(g)(1).  The statute does not modify the felon's status so as to apply only to felony convictions for crimes of violence or felonies that render the felon a threat to others. The prohibited status is simply felon.  Therefore, Jernigan's as applied challenge to § 922(g)(1) fails for lack of a predicate.

**(2)   26 U.S.C. § 5861**

For reasons previously set forth (supra, pp. 3-4), there is no understandable as applied challenge to § 5861.

---

silencers are "in common use" today (ECF No. 20, at 20), because it has determined that silencers are not protected as "arms" under the Second Amendment. However, Saleem recently undertook a discussion on this topic. See United States v. Saleem, 659 F. Supp. 3d 683, 698-99 (W.D.N.C. 2023) ("silencers fall into the category of 'dangerous and unusual weapons' and are outside the scope of the Second Amendment's protection.").

## CONCLUSION

For the reasons set forth above, MR. JERNIGAN'S FIRST MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT (ECF No. 18) was denied.

It is so ORDERED.

_____ /s/  REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 24, 2024

21